JOHN A. DICICCO
Principal Deputy Assistant Attorney General

JEREMY N. HENDON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 353-2466
Facsimile:  (202) 307-0054
Email: Jeremy.Hendon@usdoj.gov
       Western.Taxcivil@usdoj.gov
*Attorneys for Respondent*

LAURA E. DUFFY
United States Attorney
Southern District of California
*Of Counsel*

IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GCR, LLP, YURI CALDERON and ELVIA CALDERON,<br><br>             Petitioners,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>             Respondent. | CASE NO. 11cv2682- IEG (RBB)<br><br>**UNITED STATES' POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PETITION TO QUASH INTERNAL REVENUE SUMMONS PURSUANT TO 26 U.S.C. SECTION 7609(b)(2)**<br><br>Hearing Date:    January 23, 2012<br>Time:                  10:30 a.m.<br>Courtroom:        1 |

The United States of America ("United States"), by and through its undersigned counsel, hereby submits this Memorandum in Support of the United States' Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and it respectfully shows the following:

**INTRODUCTION**

Internal Revenue Service ("IRS") Revenue Officer B.W. Scoville ("RO Scoville") was conducting an investigation to aid in the collection of federal income tax liabilities of Yuri Calderon and Elvia Calderon ("Taxpayers") for the tax years ending December 31, 2008 and

1  December 31, 2009.¹  See id., ¶¶ 2, 4.  The IRS has already made assessments against the

2  Taxpayers for these outstanding federal income tax liabilities totaling approximately $243,692.

3  See id., ¶ 4.  The investigation is for the purpose of locating assets to satisfy the 2008 and 2009

4  federal tax liabilities owed by the Taxpayers which have already been assessed and not for the

5  purpose of determining the federal tax liabilities of either the Taxpayers, GCR, LLP, or any other

6  person or entity.  See id.

7    In furtherance of this investigation and pursuant to 26 U.S.C. § 7602, Revenue Officer

8  Scoville issued a summons ("Summons") to Wells Fargo Bank, NA, ("Wells Fargo") on October

9  19, 2011.  See id., ¶ 5 and Exhibit A.  The Summons directed that a representative of Wells

10  Fargo appear before Revenue Officer Scoville to give testimony and to produce certain records

11  such as copies of bank signature cards, bank statements, and a sample of five cancelled checks

12  per month from January 1, 2008 through the present regarding all accounts, according to Wells

13  Fargo's records, on which the Taxpayers are named as a depositor.  See id.  The Summons also

14  sought copies of loan applications, agreements, and related records from January 1, 2008 to the

15  present, according to Wells Fargo's records, regarding the Taxpayers.  See id.  The Summons

16  sought production of all bank accounts on which the Taxpayers are depositors because that is the

17  best way to be able to determine all bank account information regarding the Taxpayers.  See id.

18  The requested information may be relevant because it is believed that such information will

19  show funds the Taxpayers have (or have transferred to others) in order to satisfy or partially

20  satisfy their outstanding federal income tax liabilities, to determine all of the Taxpayer's

21  financial accounts (at least with Wells Fargo) and to verify representations made by the

22  Taxpayers regarding the funds they have (or do not have).  See id.

23    In addition, Mr. Calderon is an attorney and part owner of a limited liability partnership

24  law firm, GCR, LLP.  See id.; Petition, ¶¶ 10-11.  As such, a portion of the monies earned by the

---

¹RO Scoville has recently transferred to another post of duty and IRS Revenue Officer Greg Peterson ("RO Peterson") has been assigned the collection of the Taxpayers' federal income tax liabilities for the tax periods ending December 31, 2008 and December 31, 2009.  See Declaration of Revenue Officer Greg Peterson in Support of Motion to Dismiss ("Peterson Decl."), ¶ 2.

law firm directly flow through to Mr. Calderon. See id. Revenue Officer Scoville previously issued a levy to GCR, LLP requesting that any property or rights to property it owed to Mr. Calderon should be paid over to the IRS, instead of to Mr. Calderon, in order to be applied to the Taxpayers' outstanding federal income tax liabilities. See id. GCR, LLP responded that it did not have any property or rights to property that it owed to, or was holding for, Mr. Calderon. See id. If Mr. Calderon is named as a depositor on any of GCR, LLP's bank accounts at Wells Fargo, such account information would be relevant to verify representations by GCR, LLP in response to the previous levy served on it and to show any funds GCR, LLP has, a portion of which belong to Mr. Calderon. See id. In addition, the names of various payors on checks issued to GCR, LLP might also be relevant to the IRS's investigation because the IRS may need to contact such individuals to verify whether they owe any additional funds to GCR, LLP, whether they are behind in payments to GCR, LLP, and/or to verify that such payments were in fact made for services performed by GCR, LLP, such that a portion of the funds in the account would necessarily belong to Mr. Calderon. See id.

Pursuant to 26 U.S.C. § 7603, Revenue Officer Scoville served the Summons by certified mail to the person to whom it was directed on October 20, 2011. See id., ¶ 6 and Exhibit B. A Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is not in effect with respect to the Taxpayers for the years under investigation. See id., ¶ 8. In addition, with the exception of a few bank records identified in the Peterson Decl., the documents sought in the Summons are not already in the possession of the IRS. See id., ¶ 9.

On November 16, 2011, Petitioners filed a Petition to Quash Internal Revenue Summons Pursuant to 26 U.S.C. Section 7609(b)(2) ("Petition"). The Petition alleges that the Summons, issued to Wells Fargo seeking bank records for accounts on which the Taxpayers are depositors as part of its collection efforts against the Taxpayers, should be quashed because the Summons seeks records of a third party (GCR, LLP) which is not the Taxpayers, production of those records would violate the attorney-client privilege, the IRS cannot establish that those records are relevant to its investigation, the Summons is overbroad and ambiguous, the Summons

1  violates the Paperwork Reduction Act, the IRS did not give notice to Petitioners of the
2  Summons, the IRS did not provide the Taxpayers with notice that it was going to be contacting
3  third parties as required by 26 U.S.C. § 7602(c), the Taxpayers are unhappy with the IRS's
4  efforts to collect their outstanding federal income tax liabilities, and the Taxpayers insist that
5  they are entitled to an evidentiary hearing.  See Petition, ¶¶ 25-43.

6  Because the notice provisions under 26 U.S.C. § 7609(a) are not applicable to the
7  Summons at issue and Taxpayers have a legal interest in the Wells Fargo bank accounts that are
8  responsive to the Summons, including accounts in the name of GCR, LLP, the United States now
9  moves to dismiss the Petition for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P.
10 12(b)(1).  In addition, the bank records regarding GCR, LLP, that are responsive to the Summons
11 are not covered by the attorney-client privilege and are relevant to the IRS's investigation to aid
12 in the collection of the Taxpayers' federal income tax liabilities for the tax periods ending
13 December 31, 2008 and December 31, 2009.

## ARGUMENT

### I.  Legal Standard.

16 Fed. R. Civ. P. 12(b)(1) allows a defendant may move to dismiss an action for lack of
17 subject matter jurisdiction.  On such a motion, the plaintiff bears the burden of establishing that
18 subject matter jurisdiction exists.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,
19 377 (1994).  The United States, as sovereign, may not be sued without its consent, and the terms
20 of its consent define the court's jurisdiction to hear the suit.  See United States v. Mitchell, 445
21 U.S. 535, 538 (1980); United States v. Testan, 424 U.S. 392, 399 (1976); United States v.
22 Sherwood, 312 U.S. 584, 586 (1941).  Any  waiver of  sovereign immunity must be
23 unequivocally expressed and cannot be implied.  See Mitchell, 455 U.S. at 538.  If the United
24 States has not waived sovereign immunity, the suit must be dismissed.  See Hutchinson v. United
25 States, 677 F.2d 1322, 1327 (9th Cir. 1982).  Statutory waivers of sovereign immunity are to be
26 strictly construed against such surrender, Safeway Portland Employees' Fed. Credit Union v.
27 FDIC, 506 F.2d 1213, 1216 (9th Cir. 1974), and any suit that is brought must be in strict

28                                                       -4-                              Civil No. 11-cv-2682-IEG(RBB)

1  compliance with the terms of the statute, Sherwood, 312 U.S. at 590. The plaintiff bears the

2  burden of demonstrating that the United States has waived its sovereign immunity. See

3  Holloman v. Watt, 708 F.2d 1399, 1401 (9th Cir. 1983).

**II.     Petitioners were not entitled to notice under 26 U.S.C. § 7609(a) and therefore they lack standing to bring the Petition.**

The Taxpayers and GCR, LLP (collectively referred to as "Petitioners") contend that "[t]his court has jurisdiction over this action pursuant to 26 U.S.C. § [sic] Sections 7609(b)(2)(A) and 7609(h)(1) as Wells Fargo Bank, N.A. operates within the Southern District of California." See Petition, ¶ 2. As discussed below, Petitioners do not fall within the persons covered by section 7609(b) and thus section 7609(h)(1) is inapplicable.

A person is entitled to begin a proceeding to quash a summons issued to a third party if such person is entitled to notice of the summons pursuant to subsection (a) of 26 U.S.C. § 7609. See 26 U.S.C. § 7609(b)(2)(A). A person identified in such summons is entitled to notice of the summons, but only if 26 U.S.C. § 7609, as a whole, applies to a summons issued to such third party. See 26 U.S.C. § 7609(a)(1). In describing who shall receive notice of a summons issued to a third party, 26 U.S.C. § 7609 states:

> If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to ... any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified...

26 U.S.C. § 7609(a)(1) (emphasis added). Thus, to be entitled to notice of the summons pursuant to 26 U.S.C. § 7609, this section, as a whole, must apply to the summons issued to the third party. See 26 U.S.C. § 7609(a)(1).

Pursuant to exceptions listed in 26 U.S.C. § 7609, this section as a whole, does not apply to certain situations. Most importantly in the instant case, 26 U.S.C. § 7609 does not apply when a summons is issued to a third party "in aid of the collection" of an assessment against a taxpayer with respect to whose liability the summons was issued. See 26 U.S.C. § 7609(c)(2)(D)(i). The result of this exception is that a taxpayer is not entitled to notice of a third party summons issued regarding such taxpayer's tax liability when the summons is "issued in aid of the collection" of

-5-                                      Civil No. 11-cv-2682-IEG(RBB)

the tax liability.  See Viewtech, Inc. v. United States, 653 F.3d 1102, 1104, 1106 (9th Cir. 2011); see Cranford v. United States, 359 F. Supp. 2d 981, 986 (E.D. Cal. 2005); Olivia v. United States, 221 F.R.D. 540, 544 (D. Haw. 2003).  "[I]f a person is not entitled to notice ..., he or she has no standing to initiate an action to quash the summons." Ip v. United States, 205 F.3d 1168, 1170, n.3 (9th Cir. 2000); see also Cranford, 359 F. Supp. 2d at 986.

Here, the Summons was issued to aid in the collection of assessed tax liabilities.  See Peterson Decl., ¶¶ 2-4.  Because the Summons was issued to aid in the collection of the Taxpayer's outstanding tax liabilities, petitioners are not entitled to notice of the summons.  See 26 U.S.C. §7609(c)(2)(D)(i); Viewtech, 653 F.3d at 1102, 1106.  Petitioners' lack of entitlement to notice of the summons leaves Petitioners with no standing to bring this action.  See id., Ip, 205 F.3d at 1170, n.3; Cranford, 359 F. Supp. 2d at 986.  Thus, without standing to file the Petition in this Court, Petitioners' action should be dismissed for lack of subject matter jurisdiction.  See Viewtech, 653 F.3d at 1106.

**III.   The exception to the exception in the Ninth Circuit as to whether notice is required does not apply.**

Although not set forth in the Petition, the United States Court of Appeals for the Ninth Circuit has held that "the notice exception in § 7609(c)(2)(B)[2] applies only where the assessed taxpayer has a recognizable legal interest in the records summonsed." Ip, 205 F.3d at 1176 (internal quotation omitted).  In Viewtech, the Ninth Circuit explained that in Ip, it had created a "rule that a third party should receive notice that the IRS has summonsed the third party's records unless the third party was the assessed taxpayer, a fiduciary or transferee of the taxpayer, or the assessed taxpayer had 'some legal interest or title in the object of the summons.'" Viewtech, 653 F.3d at 1105 (citing Ip, 205 F.3d at 1175-76).  Ip "addressed when an individual has standing to challenge an IRS summons concerning their own records in connection with collecting a tax assessment from another individual or entity." Cranford, 359 F.Supp 2d at 986.

---

[2]The Ninth Circuit noted that as a result of the IRS Restructuring and Reform Act of 1998, this is now codified at 26 U.S.C. § 7609(c)(2)(D).  See Ip, 205 F.3d at 1170 n.4.

-6-                              Civil No. 11-cv-2682-IEG(RBB)

1  This exception cannot apply to the Taxpayers.  Thus, the discussion below only pertains to
2  petitioner GCR, LLP.
3        If the Ip rule applies, then GCR, LLP, would be entitled to notice and thus would have
4  standing.  However, the Ip rule does not apply here.  GCR, LLP (and the Taxpayers) are
5  primarily concerned about the production of bank records from Wells Fargo Bank regarding
6  accounts in the name of GCR, LLP.  See Petition, ¶¶ 10-12, 28-32.  Petitioners have admitted,
7  however, that GCR, LLP is a limited liability partnership law firm, Mr. Calderon owns 34% of
8  GCR, LLP, Mr. Calderon is an attorney and managing partner of GCR, LLP, Mr. Calderon is
9  responsible for signing checks issued from GCR, LLP's bank accounts, and Mr. Calderon is
10  responsible for depositing funds into GCR, LLP's bank accounts.  See id., ¶¶ 10-12.  When
11  applying the Ip rule and considering the parties' relationships to one another, the Ninth Circuit
12  applies the rule non-technically.  Viewtech, 653 F.3d at 1105 (citing Ip, 205 F.3d at 1175-76).
13  For example, when "considering whether a taxpayer had a sufficient legal interest in the object
14  of the summons, [the Ninth Circuit] consider[s] whether there was an employment, agency, or
15  ownership relationship between the taxpayer and third party." Id. (citing Ip, 205 F.3d at 1176).
16  Petitioner's admissions clearly meet the Ip inquiry as Mr. Calderon is an owner of GCR, LLP
17  and also has access and authority over GCR, LLP's bank accounts to deposit and withdraw funds
18  from those accounts.  Therefore, pursuant to section 7609(c)(2)(D) and under Ip and Viewtech,
19  GCR, LLP is not entitled to notice under section 7609(a).  Without such entitlement, GCR, LLP,
20  also lacks standing to quash the Summons and the Petition must be dismissed for lack of subject
21  matter jurisdiction.
22  **IV. Petitioners' other arguments similarly are without merit.**
23        **A.    The Summons meets the Powell factors.**
24  Petitioners also argue that the United States cannot establish that the Summons meets the
25  requirements for enforcement of an IRS summons.  Although there is no claim of enforcement in
26
27
28                                                             -7-                            Civil No. 11-cv-2682-IEG(RBB)

this action,[3] Petitioners are wrong. In order to obtain enforcement of a summons, the United States must establish that the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS' possession; and (4) satisfies all administrative steps required by the Internal Revenue Code. United States v. Powell, 379 U.S. 48, 57-58, (1964). The burden of satisfying the Powell requirements is a "slight one" that can be met merely by presenting the sworn affidavit attesting to these facts. United States v. Dynavac, Inc., 6 F.3d 1407, 1414 (9th Cir. 1993); United States v. Gilleran, 992 F.2d 232, 233 (9th Cir. 1993).

Once the government makes its prima facie case for enforcement through submission of the Revenue Officer's declaration, a "heavy" burden is placed on the taxpayer to defeat enforcement. See United States v. LaSalle National Bank, 437 U.S. 298, 316 (1978); Lidas, Inc. v. United States, 238 F.3d 1076, 1082 (9th Cir. 2001); Fortney v. United States, 59 F.3d 117, 119 (9th Cir. 1995). To accomplish this purpose, the "taxpayer must allege specific facts and evidence to support his allegations." Liberty Financial Services v. United States, 778 F.2d 1390, 1393 (9th Cir. 1985). In this regard, the taxpayer must oppose the government's allegations by affidavit supporting such specific facts; mere legal conclusions or memoranda of law are insufficient. United States v. Balanced Financial Management, Inc., 769 F.2d 1440, 1444 (10th Cir. 1985) (citing United States v. Garden State National Bank, 607 F.2d 61, 71 (3rd Cir. 1979)).

Here, the Summons easily meets the Powell factors. First, the Summons was issued for a legitimate purpose. ROs Scoville and Peterson are trying to collect the Taxpayer's outstanding federal income tax liabilities for the 2008 and 2009 tax years and the Summons was issued to aid in their investigation into locating assets to satisfy the federal tax liabilities owed by the Taxpayers which have already been assessed. See Peterson Decl., ¶¶ 1-2, 4.

---

[3] The United States has not filed a counterclaim seeking enforcement of the Summons because if the Petition is denied, the decision in this matter would be determinative of the validity of the Summons. This discussion is included, however, because Petitioners raise Powell and argue that the Summons should be quashed because it does not meet the Powell factors.

      Second, the Summons seeks relevant information for that purpose. The Internal Revenue Code authorizes the IRS to examine "any books, papers, records, or other data which may be relevant or material." 26 U.S.C. § 7602 (emphasis added.)  The relevance standard of § 7602 does not require the IRS to have probable cause to investigate, Powell, 379 U.S. at 57-58, or to satisfy "the relevance standards used in deciding whether to admit evidence in federal court." United States v. Arthur Young & Co., 465 U.S. 805, 814 (1984).  Rather, the relevance requirement is a minimal one, looking only at whether the information sought "may be relevant to the purpose" of the summons. See Powell, 379 U.S. at 57-58.  The low threshold for satisfying the relevance requirement results, in part, from the fact that "the Service can hardly be expected to know whether [summoned] data will in fact be relevant until it is procured and scrutinized." Arthur Young & Co., 465 U.S. at 814.  See also Powell, 379 U.S. at 57 (The IRS can issue a summons to investigate "'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" (citation omitted)).  On the other hand, the burden on the IRS is "not non-existent." United States v. Goldman, 637 F.2d 664, 667 (9th Cir. 1980). The IRS is required to show that it has a "'realistic expectation rather than an idle hope that something might be discovered.'" David H. Tedder & Associates, Inc. v. United States, 77 F.3d 1166, 1169 (9th Cir. 1996) (citation omitted).  Seeking bank account information for all bank accounts on which the Taxpayers are depositors is the best way to be able to determine all bank account information regarding the Taxpayers. See Peterson Decl., ¶ 5.  The requested information may be relevant because it is believed that such information will show funds the Taxpayers have (or have transferred to others) in order to satisfy or partially satisfy their outstanding federal income tax liabilities, to determine all of the Taxpayer's financial accounts (at least with Wells Fargo) and to verify representations made by the Taxpayers regarding the funds they have (or do not have). See id.

      Third, with the exception of the few documents listed below, the information requested in the Summons is not already within the possession of the IRS. See id., ¶ 9.  The documents that are currently in the possession of the IRS are (1) bank statements from Wells Fargo account

-9-   Civil No. 11-cv-2682-IEG(RBB)

1  number ------0475 for November and December 2010 and January through April 2011 and (2)
2  statements from Wells Fargo for February and March 2010 for a loan. See id.

3  Fourth, all administrative steps required by the Internal Revenue Code for issuance and
4  service of the Summons have been followed. See id., ¶ 7.[4]

5  Finally, a Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is not in
6  effect with respect to the Taxpayers for the years under investigation. See id., ¶ 8.

7  Therefore, the United States has met its prima facie burden and now a "heavy" burden is
8  placed on Petitioners to defeat enforcement by showing an "abuse of process" or "the lack of
9  institutional good faith." Fortney, 59 F.3d at 119. To accomplish this purpose, Petitioners "must
10 allege specific facts and evidence to support his allegations." Liberty Financial Services, 778
11 F.2d at 1393. This they have not, and cannot, do.

**B.     The Summons is not overly broad.**

Petitioners argue that the Summons "is so broad and ambiguous as to leave the summonsed [sic] party in substantial doubt as to the scope of their duties and therefore to err on the side of burdensome and excessive production of documents and information." Petition, ¶ 29. This argument is meritless. The Summons is very clear that it seeks various specific bank account information for all accounts on which the Taxpayers are depositors. Petitioners have produced no evidence that Wells Fargo cannot discern which documents it must produce in response to the Summons. Thus there is no ambiguity and no doubt as to which documents must be produced.

Further, the Summons is not overbroad. Pursuant to 26 U.S.C. § 7602, the IRS has "broad and expansive" authority to summon documents from taxpayers, provided that the documents "may be relevant or material" to the IRS' inquiry. United States v. Judicial Watch, Inc., 371 F.3d 824, 831-832 (D.C. Cir. 2004)(citing United States v. Bichara, 826 F.2d 1037, 1039 (11th Cir. 1987)). The use of the words "may be" in the statute "reflects Congress' express

---

[4] Petitioners raise several specific arguments regarding administrative steps that they claim were not followed. Those arguments are addressed separately below.

intention to allow the IRS to obtain items of even <u>potential</u> relevance to an ongoing investigation." <u>Arthur Young & Co.</u>, 465 U.S. 805, 814 (1984) (emphasis in original). Obtaining bank account information regarding all bank accounts on which the Taxpayers are depositors (and thus have control over) "might throw light" upon the assets of the Taxpayers which could be used to satisfy or partially satisfy the Taxpayers' outstanding federal income tax liabilities. Therefore, the Summons is not overly broad.

**C. Any bank account information of GCR, LLP (or others) on which the Taxpayers are depositors is relevant to the IRS's collection investigation.**

Petitioners next contend that the requested bank account information in the name of GCR, LLP, or anyone else is not relevant to the collection of taxes owed by the Taxpayers. <u>See</u> Petition, ¶¶ 30-31. Petitioners incorrectly rely on <u>Tedder</u> to argue that client names of an attorney that appear on bank records in response to a Summons are , <u>per se</u>, not relevant or even potentially relevant.

In <u>Tedder</u>, the United States Court of Appeals for the Ninth Circuit did not announce a rule of law providing that client-identifying information cannot be relevant to an IRS investigation. There, the IRS was examining the 1989 return of a law firm. During the examination, it issued a summons to the law firm seeking records for four accounts of the firm at a financial institution. The law firm provided the records, but redacted client names. The IRS then issued a third-party summons to the financial institution seeking the institution's records for the firm's accounts. The law firm filed a petition to quash the summons, arguing, as relevant here, that the identity of its clients was not relevant to the examination. After an evidentiary hearing, the district court conducted an <u>in camera</u> inspection of the documents and ruled that the summons should be quashed with respect to the client-identifying information. <u>See id.</u> at 1167-68. The Ninth Circuit affirmed. <u>See id.</u> at 1169-70. The Ninth Circuit held that the record did not show that the Government had met its minimal burden of showing how the client names had potential relevance to its audit. <u>See id.</u> at 1170. In this regard, the Ninth Circuit pointed to the district court's finding that the IRS was given the opportunity to review redacted copies of the

-11-   Civil No. 11-cv-2682-IEG(RBB)

1  documents at issue and was unable to show any discrepancies between the records and the tax

2  returns. See id. The Ninth Circuit further observed that the district court conducted an in-depth

3  in camera review of the unredacted records and took that evidence into account in making its

4  finding. See id.

5        The Ninth Circuit subsequently faced a similar issue wherein it confirmed that Tedder

6  did not announce a rule of law regarding the relevance of client-identifying information and

7  further indicated that Tedder should be confined to the situation where the IRS fails to maintain

8  that interviewing clients may help in some aspect of the investigation. Reiserer v. United States,

9  479 F.3d 1160, 1166 (9th Cir. 2007).[5] In Reiserer, the IRS issued a third-party summons to a

10  bank seeking records that would identify the clients of a law firm that was being examined to

11  determine if the firm was liable for the penalty for promoting abusive tax shelters under 26

12  U.S.C. § 6700. The firm objected to the disclosure of client-identifying information and cited

13  Tedder to support its objection. The Ninth Circuit held that Tedder was "not apposite." Id. The

14  Ninth Circuit read Tedder as a case in which "the district court found that [the IRS] had failed to

15  show how clients' names were relevant to the audit of the firm [under examination] because

16  clients could not provide information which would help determine the correctness of the firm's

17  tax return." Id. (emphasis added). The Ninth Circuit distinguished the case before it in Reiserer,

18  stating that "[h]ere, in contrast, the IRS maintains that interviewing Reiserer's clients may help

19  the IRS determine the number of illegal schemes marketed by Reiserer, a purpose relevant to a

20  § 6700 investigation." Id.

21        Here, unlike in Tedder but similar to Reiserer, the United States has shown why the bank

22  account records of GCR, LLP (including any client names) are relevant to the IRS' investigation.

---

[5]Even more recently, the Ninth Circuit found that summonses issued to third-party financial institutions seeking client-identifying information in accounts of a taxpayer who was an attorney as part of a criminal investigation into the taxpayer's tax liabilities for 2002-07 sought relevant information where the IRS had not previously received name-redacted copies of the requested records (as in Tedder), the IRS could not yet determine if there were discrepancies between the records and the tax returns, and the district court had not performed any in camera examination of the unredacted records to determine the relevance of the clients' names. See Sears v. United States, 392 Fed. Appx. 605, 606-07 (9th Cir. 2010).

Petitioners admit Mr. Calderon is an attorney and part owner of GCR, LLP, a limited liability partnership law firm. See Petition, ¶¶ 10-11. RO Peterson stated that as such, a portion of the monies earned by the law firm directly flow through to Mr. Calderon. See Peterson Decl., ¶ 5. Further, RO Peterson stated that RO Scoville previously issued a levy to GCR, LLP, requesting that any property or rights to property it owed to Mr. Calderon should be paid over to the IRS, instead of to Mr. Calderon, in order to be applied to the Taxpayers' outstanding federal income tax liabilities. See id. GCR, LLP responded that it did not have any property or rights to property that it owed to, or was holding for, Mr. Calderon. See id. RO Peterson stated that if Mr. Calderon is named as a depositor on any of GCR, LLP's bank accounts at Wells Fargo, such account information would be relevant to verify representations by GCR, LLP in response to the previous levy served on it and to show any funds GCR, LLP has, a portion of which belong to Mr. Calderon. See id. In addition, RO Peterson stated that the names of various payors on checks issued to GCR, LLP might also be relevant to the IRS' investigation because the IRS may need to contact such individuals to verify whether they owe any additional funds to GCR, LLP, whether they are behind in payments to GCR, LLP, and/or to verify that such payments were in fact made for services performed by GCR, LLP, such that a portion of the funds in the account would necessarily belong to Mr. Calderon. See id.

Accordingly, Petitioners' argument is misplaced and should be denied.

**D.     Any bank account information of GCR, LLP on which the Taxpayers are depositors is not protected from disclosure by the attorney-client privilege.**

Petitioners also argue that production of bank records in the name of GCR, LLP, on which the Taxpayers are depositors would violate the attorney-client privilege. See Petition, ¶ 32. Petitioners argument is meritless. The Ninth Circuit recently has reaffirmed that the records that the IRS seeks – records of third-party financial institutions – are not subject to the attorney-client privilege because they do not reveal a confidential communication between a client and an attorney or advice given by an attorney in response to a confidential communication by a client.

-13-                              Civil No. 11-cv-2682-IEG(RBB)

See Reiserer, 479 F.3d at 1165-66.[6]  In rejecting the claim of privilege in that case, the Ninth Circuit held that "[i]t is well settled that there is no privilege between a bank and a depositor." Id. at 1165 (citing Harris v. United States, 413 F.2d 316, 319 (9th Cir. 1969)).  The Ninth Circuit stated that "there is no confidentiality where a third party such as a bank either receives or generates the [wide variety of account-related] documents sought by the IRS."  Id.  And, the Court expressly rejected the client-identifying argument made in the instant case: "[t]o the extent those documents disclose the identity of [the law firm's] clients, the attorney-client privilege does not protect that information."  Id.[7]

Accordingly, Petitioner's attorney-client privilege argument should be rejected.

**E.     The Paperwork Reduction Act is not applicable to IRS summonses.**

Although not clearly articulated, Petitioners argue that by issuing the Summons, the IRS is not in compliance with the Paperwork Reduction Act.  See Petition, ¶ 33.  The Paperwork Reduction Act does not apply to summonses issued by the IRS.  See United States v. Saunders, 951 F.2d 1065, 1066–67 (9th Cir. 1991); see also Theuring v. United States, 178 F.3d 1296 (6th Cir. 1999); United States v. McAnlis, 721 F.2d 334, 337 (11th Cir.1983), cert. denied, 467 U.S. 1227 (1984); United States v. Berney, 713 F.2d 568, 572 (10th Cir.1983).

---

[6]Even more recently, the Ninth Circuit rejected a similar claim of attorney-client privilege in a very similar situation.  See Sears, 392 Fed. Appx. at 607.

[7]The Ninth Circuit in Reiserer also reiterated its explanation in Harris, 413 F.2d at 319, as to why records of third-party financial institutions do not warrant protection under the attorney-client privilege:

> The reasons which led to the attorney-client privilege, such as the aim of encouraging full disclosure in order to enable proper representation, do not exist in the case of a bank and its depositor.  Moreover, the client, by writing the check which the attorney will later cash or deposit at the bank, has set the check afloat on a sea of strangers.  The client knows when delivering the check, and the attorney knows when cashing or depositing it, that the check will be viewed by various employees at the bank where it is cashed or deposited, at the clearing house through which it must pass, and at his own bank to which it will eventually return.

See also United States v. Miller, 425 U.S. 435, 442 (1976) (pointing out that "checks are not confidential communications but negotiable instruments to be used in commercial transactions" and that bank records "contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business.")

1   Accordingly, Petitioners' argument should be rejected.

2   **F.     The IRS complied with the requirements in 26 U.S.C. § 7602.**

3   Petitioners next argue that the IRS failed to comply with the requirements of 26 U.S.C. § 7602(c)(1) because the Taxpayers never have received notice of third-party contacts from the IRS. See Petition, ¶ 35. This argument also is meritless. "Pre-contact notice under [the applicable Treasury Regulation] need not be provided to a taxpayer for third-party contacts of which advance notice has otherwise been provided to the taxpayer pursuant to another statute, regulation or administrative procedure." 26 C.F.R. § 301.7602-2(d)(2). "For example, Collection Due Process notices sent to taxpayers pursuant to section 6330 and its regulations constitute reasonable advance notice that contacts with third parties may be made in order to effectuate a levy." Id. The mandatory notice was made by RO Scoville by two different methods. First, on March 28, 2011, RO Scoville sent IRS Letter 3164B, Notice of Third Party Contact, to 755 Rosecrans St, San Diego, CA 92106-3012, the Taxpayers' last known address, informing the Taxpayers that RO Scoville may contact third parties regarding his investigation. See Peterson Decl., ¶ 7. Second, on April 19, 2011, RO Scoville sent separate Letters 1058A, Final Notice- Notice of Intent to Levy and Notice of Your Right to a Hearing, to each of the Taxpayers to 755 Rosecrans St, San Diego, CA 92106-3012, the Taxpayers' last known address, regarding levies that RO Scoville was going to be sending in order to try and collect the Taxpayer's outstanding federal income tax liabilities for the 2008 and 2009 tax years. See id.

Petitioners also argue that the IRS has not provided the Taxpayers with post-contact notice of contact with third parties as required by 26 U.S.C. § 7602(c)(2). This argument also is meritless. Each time the IRS has issued a levy to a third party, the IRS has provided the Notice of Intent to Levy to the Taxpayers at their last known address. See Peterson Decl., ¶ 7. With respect to any other contacts, the Taxpayers have not alleged they have requested that any such notice be provided. Further, "a post-contact record under this [the applicable Treasury Regulation] need not be made, or provided to a taxpayer, for third-party contacts of which the

taxpayer has already been given a similar record pursuant to another statute, regulation, or administrative procedure." 26 C.F.R. § 301.7602-2(e)(3).

Accordingly, Petitioners' argument should be rejected.

### G. This proceeding is not the venue in which to challenge the IRS's collection activities.

Petitioners repeatedly raise issues and complaints they have with respect to the manner in which the IRS is attempting to collect the Taxpayers' outstanding federal income tax liabilities. Specifically, Petitioners insist that the IRS should accept the Taxpayers' proposed installment agreement rather than determine if the Taxpayers have assets greater than what the Taxpayers identified to the IRS and should not attempt to levy upon and/or otherwise collect those assets to satisfy the Taxpayers' outstanding federal tax liabilities. This petition to quash an IRS summons proceeding is not the correct venue in which to make such claims.[8]  Proceedings regarding IRS summons are to be summary in nature and the taxpayer has few defenses. See United States v. Church of Scientology of California, 520 F.2d 818, 821 (9th Cir. 1975); United States v. Derr, 968 F.2d 943, 945 (9th Cir. 1992).

In contrast, if a taxpayer has complaints or concerns regarding potential collection activities of the IRS, such as levies and liens, the taxpayer's remedy is to file a request for a collection due process hearing once the taxpayer receives notice of the proposed collection action. See 26 U.S.C. §§ 6320, 6330. Here, the Taxpayers did not do so and thus cannot be heard to complain in this summons proceeding about other IRS collection activities.

Accordingly, Petitioners' argument is inapplicable and should be rejected.

---

[8] To the extent the Taxpayers are arguing that the IRS issued the Summons in bad faith because the IRS should have accepted their installment agreement instead, the Taxpayers' argument is not well taken. The Summons was issued, in part, to verify representations made by the Taxpayers regarding the funds they have (or do not have). See Peterson Decl., ¶ 5. The IRS is not acting in bad faith by seeking third-party verification and substantiation of representations made by the Taxpayers. The IRS need not accept the word of the Taxpayers and is entitled to determine the facts for itself. See Tiffany Fine Arts, Inc. v. United States, 469 U.S. 310, 323 (1985). This is especially true where as here, the Taxpayers have filed returns reporting substantial income, but not paying the amounts of tax due on the returns, and then representing that they do not have funds to pay the taxes.

**H.     Petitioners are not entitled to an evidentiary hearing.**

Lastly, Petitioners ask the Court to hold an evidentiary hearing in this matter in order to allow them an opportunity to question the Revenue Officer and his Group Manager "to get to the bottom of why the IRS continues to harass willing taxpayers and why the IRS has refused and continues to refuse to properly respond to Taxpayer and his counsel." Petition, ¶ 43. Petitioners have failed to allege facts and set forth supporting evidence sufficient to warrant such an extreme and unwarranted measure in this case.

It is well settled that summons proceedings are intended to be summary proceedings. Church of Scientology of California, 520 F.2d at 821; Derr, 968 F.2d at 945. As such, "discovery in a summary summons enforcement proceeding is the exception rather than the rule" and "[t]he party resisting enforcement should be required to do more than allege an improper purpose before discovery is granted." Church of Scientology of California, 520 F.2d at 824. That is because allowing discovery in what is meant to be a summary proceeding would place undue burdens on the IRS and improperly impede the summons procedure. Id. In the Ninth Circuit, limited discovery is only allowed in summons proceedings "if the taxpayer can make a substantial preliminary showing of abuse or wrongdoing." United States v. Stuckey, 646 F.2d 1369, 1374 (9th Cir. 1981).

Furthermore, the standard in the Ninth Circuit for obtaining an evidentiary hearing in the summons context is that the taxpayer must provide a "minimal amount of evidence" that the summons at issue was not issued for any legitimate purpose. United States v. Tanoue, 94 F.3d 1342, 1345 (9th Cir. 1996) (citing Stuckey, 646 F.2d at 1372))(emphasis added). That is because "[e]ven the co-existence of an improper purpose would not prevent enforcement of the summons if the existence of a legitimate purpose was not rebutted by the taxpayer." Stuckey, 646 F.2d at 1375.

Petitioners have not presented any evidence to rebut the legitimate purposes for the issuance of the Summons as stated by RO Peterson in paragraph 5 of his declaration. Petitioners

have also failed to show that the information sought in the Summons may not be relevant to those purposes.

Accordingly, Petitioners are not entitled to an evidentiary hearing under Ninth Circuit precedent.

## **CONCLUSION**

Based on the foregoing, the Petition should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In the alternative, the Petition should be denied.

Respectfully submitted this 9th day of January, 2012.

Respectfully submitted,

JOHN A. DICICCO
Principal Deputy Assistant Attorney General

By: /s/ Jeremy N. Hendon
JEREMY N. HENDON
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683
Ben Franklin Station
Washington, D.C. 20044

Of Counsel:

LAURA E. DUFFY
United States Attorney
Southern District of California

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing **UNITED STATES' POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PETITION TO QUASH INTERNAL REVENUE SUMMONS PURSUANT TO 26 U.S.C. SECTION 7609(b)(2)** has been made this 9th day of January, 2012 via the Court's CM/ECF system to:

Jerry A. Stevenson       stevensonja@stevensonlawgroup.com

/s/ Jeremy N. Hendon
JEREMY N. HENDON
Trial Attorney, Tax Division
U.S. Department of Justice

Civil No. 11-cv-2682-IEG(RBB)